FILED IN CLERKS OFFICE

JUL 6 '26 AM10:43 USDC MA

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

C.A. No. _____

| | |
|---|---|
| Michael J. Cox JR, Plaintiff | |
| v. | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ServiceMac LLC, Defendant. | |

Plaintiff Michael J. Cox Jr. ("Plaintiff"), proceeding *pro se*, alleges the following upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. This action arises from the unfair, deceptive, and unlawful trade practices of Defendant ServiceMac, LLC ("Defendant" or "ServiceMac") in its capacity as a mortgage loan servicer, which include a deliberate campaign of deceit and economic coercion to deprive Plaintiff of pandemic-related benefits available to home loans backed by Freddie Mac, a bad-faith "bait-and-switch" settlement tactic, and repeated failures to comply with its statutory duties under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and Regulation X, 12 C.F.R. Part 1024.

1

## II. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiff's claims arise under federal law, including RESPA, 12 U.S.C. § 2605, and Regulation X.

3. This Court has supplemental jurisdiction over Plaintiff's state law consumer protection claim pursuant to 28 U.S.C. § 1367, because the claims under Massachusetts General Laws Chapter 93A are so related to the federal RESPA claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Commonwealth of Massachusetts, the subject property is located within this District, and Plaintiff resides within this District.

## III. THE PARTIES

5. Plaintiff Michael J. Cox Jr. is an individual residing in Worcester County, Massachusetts. Plaintiff is the borrower on the residential mortgage loan at issue in this action.

6. Defendant ServiceMac, LLC is a Delaware limited liability company with its principal place of business in South Carolina. Defendant conducts substantial business in the Commonwealth of Massachusetts and is engaged in the business of servicing residential mortgage loans. Creative Solutions is the local registered agent for ServiceMac. (*See* Exhibit A)

## IV. FACTUAL ALLEGATIONS

### A. Background

7. In 2021, Plaintiff purchased his first and only home at the cost of approximately $420,000, with approximately $50,000 cash down and a loan for the balance.

8. Plaintiff obtained this loan through Movement Mortgage LLC for about $368,000.

9. Defendant ServiceMac, LLC behaved as a typical mortgage loan servicer, responsible for collecting and applying borrower payments, managing default and loss-mitigation activities, sharing financial information regarding the loan and options for loss mitigation with the borrower, and other functions.

10. Plaintiff's home loan was backed by the Federal Home Loan Mortgage Corporation ("Freddie Mac"). See Exhibit B.

11. From 2021 until May 2023, all monthly loan payments were made in full and on time.

12. In May 2023, Plaintiff fell on hard times including unemployment partly caused by the national pandemic. As a result, he fell behind on his loan payments.

### B. Available Relief For Borrowers During the COVID-19 Pandemic

13. In response to the unprecedented economic disruption caused by the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which established emergency protections for borrowers with federally backed mortgage loans.

14. The CARES Act, inter alia, granted eligible borrowers experiencing a COVID-19-related financial hardship the right to request mortgage forbearance upon a simple attestation of hardship, without requiring additional documentation, and required mortgage servicers to provide qualifying forbearance for the periods authorized by the statute.

15. Following enactment of the CARES Act, the Federal Housing Finance Agency ("FHFA"), acting as conservator of Freddie Mac and Fannie Mae, issued a series of directives designed to implement and expand pandemic-related mortgage relief. In response, Freddie Mac adopted additional COVID-19 loss mitigation programs, including COVID-19 Forbearance Plans, COVID-19 Payment Deferrals, Flex Modifications, and other foreclosure-prevention measures that expanded upon the minimum protections established by Congress.

16. Freddie Mac's servicing guidance required servicers to conduct prescribed borrower outreach, evaluate eligible borrowers for available COVID-19 loss mitigation options, communicate those options and eligibility criteria to borrowers, and administer those programs in accordance with the Freddie Mac Seller/Servicer Guide.

17. In August 2023, Freddie Mac's servicing guidance generally required servicers to determine whether a borrower qualified for a COVID-19 Forbearance Plan, Deferred Payment Plan, or, as a last resort, Flex Home Loan Modification.

18. For borrowers being considered for a COVID-19 Forbearance Plan, or a Deferred Payment Plan, Freddie Mac employed a streamlined process that generally permitted servicers to rely upon the borrower's verbal affirmation of a COVID-19-related hardship.

4

19. At all times relevant to this action, Defendant ServiceMac LLC serviced Plaintiff's residential mortgage loan, which was owned or guaranteed by Freddie Mac, and was therefore required to administer the loan in accordance with applicable federal law, including the CARES Act where applicable, as well as the servicing requirements and directives issued by the FHFA and Freddie Mac.

20. As set forth below, Defendant ServiceMac LLC failed to properly evaluate and administer the pandemic-related mortgage assistance available to Plaintiff in accordance with the governing federal requirements and Freddie Mac servicing guidance. As a direct and proximate result of Defendant's conduct, Plaintiff suffered financial loss, emotional distress, and other damages.

## C. ServiceMac Deployed Unfair and Deceptive Tactics to Steer Plaintiff Away from Available COVID-19 Mortgage Relief

21. On or about June 30, 2023, Plaintiff and Defendant ServiceMac LLC participated in a telephone conversation that was recorded by Defendant. During that conversation, Plaintiff informed Defendant that he had lost his employment and was experiencing financial hardship. Despite learning of Plaintiff's loss of employment, Defendant did not inquire whether Plaintiff's hardship was directly or indirectly related to the COVID-19 pandemic, did not advise Plaintiff of the COVID-19 loss mitigation programs then available for eligible Freddie Mac borrowers, and did not evaluate Plaintiff for those programs.

5

22. Upon information and belief, on or about August 8, 2023, Defendant mailed Plaintiff a pre-approved loan modification offer. The correspondence promoted a traditional loan modification but made no mention of the COVID-19 Forbearance Plan, COVID-19 Payment Deferral, or any other pandemic-related mortgage relief options then available to eligible Freddie Mac borrowers.

23. On or about August 29, 2023, Plaintiff again spoke with Defendant on a recorded telephone line. During that conversation, Defendant encouraged Plaintiff to accept the proposed loan modification. Plaintiff, however, specifically inquired about alternatives to a loan modification, including payment deferral and forbearance programs. Rather than evaluating Plaintiff for those programs or explaining the eligibility requirements, Defendant informed Plaintiff that those options could be addressed "down the road."

24. Defendant's statement was misleading because, by August 2023, Freddie Mac had already announced that new enrollments in certain temporary COVID-19 Forbearance Plans and related pandemic relief programs would cease after October 31, 2023. Defendant did not disclose the impending deadline, did not explain the significance of delaying Plaintiff's request, and did not advise Plaintiff that postponing consideration of those programs could result in the loss of eligibility for available COVID-19 mortgage relief.

25. In other words, ServiceMac LLC omitted material information and withheld material information which kept plaintiff in the dark about any criteria or deadlines and led plaintiff to believe that there was still ample time to apply for the special programs.

26. At the time of Plaintiff's August 2023 inquiry, COVID-19 Forbearance Plans were generally administered through a streamlined process that permitted servicers to rely upon a borrower's verbal attestation of a qualifying COVID-19 hardship without requiring a traditional hardship package or extensive financial documentation. Nevertheless, Defendant neither evaluated Plaintiff for a COVID-19 Forbearance Plan nor explained the procedures or eligibility requirements applicable to those programs.

27. Throughout February 2024, Plaintiff participated in a series of additional recorded telephone conversations with Defendant concerning the servicing of his mortgage loan. On or about February 20, 2024, Plaintiff complained that Defendant had failed to properly consider him for available COVID-19 mortgage relief during the August 2023 communications. On or about February 21, 2024, Defendant advised Plaintiff that it would review the relevant call recordings and servicing notes. On or about February 27, 2024, Defendant informed Plaintiff that, in its opinion, it had committed no servicing errors.

28. During one or more of the February 2024 telephone conversations, Defendant made several statements that Plaintiff believes were materially false or misleading. Among other things, Defendant informed Plaintiff that his mortgage loan was not government-backed and therefore did not qualify for COVID-19 mortgage relief. In fact, Plaintiff's mortgage loan was owned or guaranteed by Freddie Mac. Defendant also informed Plaintiff that, even if he had qualified for a COVID-19 relief program, he would have been required to repay the deferred amounts in a lump sum at the conclusion of the benefit period. Plaintiff alleges that these representations were false or misleading and

were inconsistent with the COVID-19 mortgage assistance programs then administered for eligible Freddie Mac borrowers.

29. During one of these same telephone conversations, Defendant requested the telephone number of an unrelated individual who was attempting to contact Plaintiff while Plaintiff was speaking with Defendant. (i.e. they were "beeping" in on the other line) Plaintiff did not understand how that information related to the servicing of his mortgage loan.

30. During the same series of conversations, Defendant repeatedly suggested that Plaintiff's conduct could constitute criminal activity. Defendant repeated these accusations multiple times despite Plaintiff's denials. Plaintiff reasonably believed Defendant was attempting to create a record portraying him as having engaged in criminal conduct and feared that the accusations could later be used against him. Plaintiff became intimidated, abandoned his efforts to advocate for himself, and instead focused on avoiding further confrontation with Defendant.

31. As a direct result of Defendant's conduct, Plaintiff accepted Defendant's recommendations without continuing to pursue other available mortgage relief options. Plaintiff experienced severe emotional distress, including headaches, panic attacks, rapid heartbeat, dizziness, insomnia, humiliation, intimidation, embarrassment, diminished self-esteem, and persistent fear that Defendant was attempting to create a false record that could later be used to subject him to criminal investigation or prosecution. Plaintiff deliberately chose to become compliant and agreeable because he feared the consequences of continuing to challenge Defendant's representations while Defendant exercised substantial control over the servicing of his home mortgage.

32. Ultimately, Defendant directed Plaintiff toward a loan modification that was substantially less advantageous than the pandemic-related relief options Plaintiff had attempted to explore. Plaintiff alleges that the loan modification would have extended the repayment period by approximately ten years and substantially increased the total amount payable over the life of the loan. Thereafter, the mortgage loan proceeded toward foreclosure on multiple occasions. Plaintiff sought judicial intervention to halt the foreclosure proceedings, but those efforts were unsuccessful, and the property was ultimately scheduled for a final foreclosure sale before the events giving rise to the remaining allegations in this Complaint.

33. Had plaintiff received a forbearance or deferral, he would have enjoyed an interest free deferred balance on unpaid arrearages,incurred less fees, foreclosure costs, and his loan would not have been accelerated as quickly.

## D. ServiceMac Engaged in a "Bait-and-Switch" During Settlement Negotiations

34. Roughly two years later, on or about February 1, 2026, Defendant ServiceMac LLC issued Plaintiff an official mortgage statement identifying the amount required to reinstate his mortgage loan and return the loan to current status. The statement advised Plaintiff that the total amount necessary to bring the loan current was **$74,143.55**. A true and accurate copy of the February 1, 2026 mortgage statement is attached hereto as **Exhibit C**.

35. The February 1, 2026 mortgage statement expressly stated:

> *"You are late on your mortgage payments. Failure to bring your account current may result in fees and foreclosure – the loss of your home."*

9

36. The statement further advised:

> *"Total: $74,143.55 Due. You must pay this amount to bring loan current."*

37. Plaintiff understood these representations to mean that payment of the stated amount would cure the existing default, avoid fees, return the loan to current status, and avoid the impending foreclosure of his home. Relying upon Defendant's written representations, Plaintiff notified Defendant's counsel that he expected to receive sufficient settlement proceeds to pay the full reinstatement amount reflected on the February 1, 2026 mortgage statement.

38. Thereafter, Plaintiff and Defendant's counsel engaged in a series of email communications concerning reinstatement of the mortgage loan and resolution of the parties' pending dispute. During those communications, Plaintiff confirmed that he was prepared to pay the amount reflected on Defendant's mortgage statement in exchange for cancellation of the impending foreclosure sale, and reinstatement of the loan. Defendant, through counsel, confirmed that if Plaintiff's loan were reinstated, Plaintiff would execute a release of claims and dismiss the pending litigation with prejudice. A summary of the parties' written communications is attached hereto as **Exhibit D**.

39. On or about February 9, 2026, the parties reached mutual agreement on the essential terms of that resolution. Plaintiff agreed to pay the reinstatement amount identified by Defendant (as indicated on the invoice and reconfirmed over email), and Defendant agreed to reinstate Plaintiff's mortgage loan. Plaintiff further agreed to dismiss his claims upon confirmation that the loan had been reinstated.

40. Shortly after the parties reached this agreement, Defendant materially altered the financial terms of the agreement. Defendant informed Plaintiff's newly retained counsel that the amount necessary to reinstate the loan was no longer **$74,143.55**, but instead **$85,174.65**, representing an increase of more than **$11,000** above the amount previously represented to Plaintiff during the parties' negotiations.

41. Prior to Defendant's demand for the increased amount, Plaintiff had never been informed that Defendant would require payment of **$85,174.65** in order to reinstate the loan. Plaintiff alleges that he would not have agreed to resolve the matter under those terms had they been disclosed during the parties' negotiations.

42. These negotiations and subsequent bait and switch took place in a pressure chamber powered by an imminently impending foreclosure sale scheduled on or about February 26, 2026.

43. Subsequently, Defendant's counsel confirmed that the above-referenced communications were construed by them to represent an agreement. In fact,  they even threatened to file a motion seeking judicial enforcement of that agreement if Plaintiff refused to dismiss his claims after reinstatement of the loan. Plaintiff alleges that Defendant's position was inconsistent with its simultaneous attempt to impose a materially higher reinstatement amount than the amount that formed the basis of the parties' negotiations.

44. It is worth noting that an enforceable contract could not exist if the terms were for the plaintiff to pay the higher amount and stipulate to a dismissal in exchange for reinstatement of his loan. In that scenario, there would be no consideration. At all times, Plaintiff's loan agreement guaranteed him the right to reinstate upon payment of a

reinstatement quote.. It is only under Plaintiff's well-documented theory of liability, namely an agreement at the lesser amount, that a valid contract could exist.

45. On or about February 26, 2026, Defendant's counsel made an additional recorded statement concerning the parties' agreement. During that conversation, counsel stated:

*"I know that I got the reinstatement as **promised**. I got my client to **agree** that if he were to reinstate the loan... so we held up our end of the **bargain**."*

46. Plaintiff alleges that this statement further confirms Defendant's understanding that an agreement had been reached concerning reinstatement of the loan and demonstrates Defendant's acknowledgment that the parties had negotiated and agreed upon specific terms.

47. Plaintiff further alleges that Defendant's subsequent attempt to increase the reinstatement amount by more than $11,000 after negotiations had concluded constituted an unfair and deceptive business practice intended to induce Plaintiff to agree to materially different financial terms than those previously represented by Defendant. The bait and switch is made more foul by the fact that the new and larger amount being "switched" would make any agreement unenforceable. This is underscored by the pressurized negotiation environment with an impending foreclosure sale. As a direct and proximate result of Defendant's conduct, Plaintiff suffered financial harm, delay in resolving the mortgage default, additional litigation expenses, emotional distress, and other damages.

**D. Request for Audio Recordings of Abusive Calls with Servicemac under RESPA (2026)**

48. On or about March 4 and March 11, 2026, Plaintiff submitted a written Request for Information ("RFI") to Defendant pursuant to 12 C.F.R. § 1024.36. Plaintiff sent the RFI by certified mail, first-class mail, and electronic mail to ServiceMac.

49. The RFI sought audio recordings of the telephone conversations between Plaintiff and Defendant concerning the servicing of his loan.

50. The RFI reasonably identified Plaintiff's mortgage loan and described the records sought with sufficient specificity to enable Defendant to identify and retrieve them. The RFI constituted a valid request for information within the meaning of 12 C.F.R. § 1024.36.

51. Regulation X required Defendant to provide a written acknowledgment of receipt of the RFI within five business days of receipt, excluding holidays and weekends. Defendant did not acknowledge receipt of the RFI until on or about May 5, 2026—weeks after the five-business-day deadline had expired, in violation of 12 C.F.R. § 1024.36(c).

52. Regulation X further required Defendant to investigate the RFI and provide a substantive written response or a valid notice of extension within thirty business days. Defendant did not provide a timely notice of extension before the original response period expired.

53. On or about May 19, 2026, 49 days after receiving the RFI, Defendant purported to respond to the RFI. In reality, the "response" was completely non-responsive. It did not produce the requested audio recordings, did not identify their location, did not state they do not exist, did not confirm they did exist, and failed to provide any regulatory or statutory exception permitting Defendant to withhold them.

13

54. On or about May 19, 2026, Plaintiff promptly sent written correspondence via certified mail detailing the specific deficiencies in Defendant's response. Plaintiff further attempted to resolve the matter through follow-up calls and emails, but Defendant refused to supplement its response, provide the records, or cure its noncompliance.

55. On June 30, 2026, ServiceMac informed Plaintiff via email that a subpoena would be required to obtain the audio recordings. No valid exception was invoked under RESPA or Regulation X.

56. RESPA and Regulation X are stand alone vehicles to obtain loan servicing information, including audio recordings. Subpoenas are not required. Such a requirement would undermine the purpose of the U.S.C. and CFR.

**E. Plaintiff's Damages**

57. As a direct and proximate result of Defendant's continuous course of unfair, deceptive, and illegal practices, Plaintiff has suffered severe, distinct, and quantifiable actual damages.

58. Defendant's 2023 deceptive trade practices and intimidation deprived Plaintiff of approximately twelve months of interest-free, deferred mortgage payments that were to be payable at the end of his loan term, roughly twenty-five years from now. As a result, Plaintiff was instead required to pay those twelve monthly mortgage payments immediately, along with associated attorney's fees, late fees, and foreclosure-related costs, totaling approximately $30,000.

59. Plaintiff has been deprived of vital servicing records that federal law mandates a servicer must provide, directly impairing Plaintiff's ability to evaluate, present, and prove his legal claims arising from the servicing of his mortgage loan.

60. Plaintiff has also suffered significant emotional distress, frustration, profound anxiety, and loss of sleep as a result of Defendant's bullying tactics, false accusations of criminal behavior, and ongoing refusal to comply with federal consumer protection laws.

## V. CAUSES OF ACTION

### COUNT ONE: Violation of M.G.L. c. 93A, §§ 2 & 9
*(Unfair and Deceptive Trade Practices)*

61. Plaintiff incorporates by reference Paragraphs 1 - 60 as though fully set forth herein.

62. At all times relevant, Defendant ServiceMac was engaged in "trade or commerce" within the Commonwealth of Massachusetts as defined by M.G.L. c. 93A, § 1.

63. On May 20, 2025, Plaintiff sent Defendant a written Chapter 93A Demand Letter via Certified Mail, detailing the unfair and deceptive acts regarding the CARES Act forbearance omissions, steering, and misrepresentations. Defendant failed to make a reasonable settlement offer in response.

64. On March 4, 2026, Plaintiff sent Defendant a second written Chapter 93A Demand Letter via Certified Mail, detailing the subsequent "bait-and-switch" settlement tactics and unilateral contract alterations. Defendant again failed to make a reasonable settlement offer in response.

65. Notwithstanding the mailing of the aforementioned demand letters, Plaintiff was not contractually or legally required to serve Defendant with a 30-day demand letter prior to bringing this action pursuant to M.G.L. c. 93A, § 9(3), because ServiceMac does not maintain a place of business and does not keep assets within the Commonwealth of Massachusetts.

66. ServiceMac engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, § 2 through a continuous course of conduct in the conduct of trade or commerce, including:

  a. Intentionally omitting material facts regarding Plaintiff's entitlement to a streamlined Freddie Mac forbearance or deferred payments to steer him away from options that benefited him and toward options that economically benefited Defendant;

  b. Making affirmative, knowingly false statements regarding the federal backing of Plaintiff's loan and the repayment rules of Freddie Mac forbearance or deferred payments to financially benefit itself;

  c. Weaponizing false accusations of false criminal behavior to harass, intimidate, and exert economic duress upon a consumer;

  d. Utilizing "bait-and-switch" negotiation tactics by inducing an agreement based on a documented invoice quote and unilaterally inflating that quote post-agreement; and

  e. Failing to abide by the settlement agreement as detailed in Section C (above).

  f. Failing to honor the amount listed in the February 1, 2026 invoice in order to avoid foreclosure and fees.

g. Violations of Code of Mass Regulations, and federal counterparts, including the Massachusetts Attorney General and Division of Banks.

67. The acts and omissions of ServiceMac were willful, knowing, and conducted with a reckless disregard for consumer protection laws and federal mortgage guidelines.

68. The actions and omissions of ServiceMac are inherently unfair and deceptive business practices because they violate the Attorney General Regulations, Division of Bank regulations defining what is an unfair and deceptive practice.

69. As a direct and proximate result of ServiceMac's unfair and deceptive trade practices, Plaintiff has suffered distinct, quantifiable economic injury as set forth above. Because ServiceMac's statutory violations were committed willfully and knowingly, Plaintiff is entitled to recover double or treble (triple) damages, alongside reasonable attorneys' fees and costs pursuant to M.G.L. c. 93A, § 9.

70. Failure to honor the amount listed in the invoice and over email has resulted in overpayment of approximately $11,000.

71. Failure to allow Plaintiff to access the pandemic related Payment Deferral and Foreclosure has resulted in at least one year of mortgage payments (roughly $25,000) plus any relevant fees, costs, etc he would not have incurred otherwise.

72. Plaintiff has expended considerable time and effort to remedy the wrongful conduct of Defendant and requests compensation for his time, energy, and emotional turmoil as a result of their unfair and deceptive conduct.

**COUNT TWO:  Violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 & 12 C.F.R. § 1024.36**
*(Failure to Respond to Request for Information)*

73. Plaintiff incorporates by reference Paragraphs 1 - 72 as though fully set forth herein.

74. Defendant is a mortgage servicer subject to RESPA and Regulation X. Plaintiff submitted a valid written request for information under 12 C.F.R. § 1024.36.

75. Defendant failed to provide a timely written acknowledgment of receipt within five business days, violating 12 C.F.R. § 1024.36(c).

76. Defendant failed to provide a timely, substantive written response or to produce the requested audio recordings within the statutory period required by Regulation X.

77. Defendant failed to timely invoke the extension procedure authorized by Regulation X prior to the expiration of the response period.

78. Defendant failed to identify any legitimate statutory or regulatory basis for withholding the requested servicing information. Defendant therefore stands in direct violation of its obligations under RESPA and Regulation X.

79. As a direct and proximate result of Defendant's violations, Plaintiff suffered actual damages, including financial loss, severe impairment of his capability to prosecute his consumer claims, and emotional distress.

80. Defendant's repeated failures to comply with multiple independent statutory duties support a clear inference that Defendant has engaged in a pattern or practice of noncompliance within the meaning of 12 U.S.C. § 2605(f)(1)(B), entitling Plaintiff to statutory damages in addition to actual damages.

18

81. Defendant's willful conduct has caused economic harm to plaintiff in the form of legal claims and damages that are difficult to prove and recover for without the requested information.

### COUNT THREE: Violation of M.G.L. c. 244, § 35B
*(Failure to Take Reasonable Steps to Avoid Foreclosure)*

82. Plaintiff incorporates by reference Paragraphs 1 - 81 as though fully set forth herein.

83. At all times relevant, Plaintiff's mortgage loan was secured by a first lien on owner-occupied residential property located in Worcester County, Massachusetts, which serves as Plaintiff's principal residence.

84. Plaintiff's mortgage loan constitutes a "Certain Mortgage Loan" as defined by M.G.L. c. 244, § 35B(a), or must be treated as such because Defendant failed to properly determine its status under the statute. Defendant ServiceMac acts as a "creditor" under M.G.L. c. 244, § 35B(a) as a mortgage loan servicer.

85. Pursuant to M.G.L. c. 244, § 35B(b), a creditor or loan servicer is strictly prohibited from initiating or advancing the foreclosure process—including publishing a notice of foreclosure sale under Section 14—unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure.

86. Defendant ServiceMac failed to make a good faith effort to avoid foreclosure and actively subverted the statutory loss mitigation process through a pattern of bad-faith conduct, including:

    a.  Intentionally concealing and omitting the availability of the streamlined forbearance or deferral program;

b. Making affirmative material misrepresentations that Plaintiff did not have a federally backed loan, thereby disqualifying him for special programs;

c. Steering Plaintiff away from sustainable options and forcing him under economic duress into an alternative modification that would have added 10 years of repayment terms and $250,000 in long-term debt; and

d. Utilizing bad-faith "bait-and-switch" tactics by issuing an official $74,143.55 invoice promising to return loan to current status, avoid fees, and avoid foreclosure, inducing a settlement agreement, and subsequently inflating that demand unilaterally to $85,000.

87. By performing a deceptive post-agreement alteration of the reinstatement amount and using litigation threats to force compliance with unagreed terms, Defendant completely abandoned its statutory obligation to provide an accurate assessment of a borrower's debts and obligations as required under § 35B(c).

88. Defendant's failure to engage in a legitimate, lawful evaluation of Plaintiff's financial capability—and its deployment of harassment and false criminal accusations to destroy his capacity for self-advocacy—fully strips Defendant of any presumption of "good faith" under the law.

89. As a direct and proximate result of Defendant's bad faith and explicit violations of M.G.L. c. 244, § 35B, Plaintiff has suffered severe actual damages, including the inflation of his mortgage debt, the imposition of an unfair and predatory repayment structure, escalating late fees, and the avoidable threat of foreclosure.

## COUNT FOUR: Intentional Infliction of Emotional Distress (IIED)

90. Plaintiff incorporates by reference Paragraphs 1 - 89 as though fully set forth herein.

91. Defendant ServiceMac, through its agents and representatives, intentionally or recklessly engaged in extreme and outrageous conduct that went far beyond the bounds of ordinary consumer transaction disputes or poor customer service.

92. Specifically, Defendant's representatives intentionally weaponized the inherent power dynamics between creditor and distressed borrower, coupled with intimidation and misinformation to break Plaintiff's resolve for self-advocacy, including imputing he committed a non-existent crime.

93. Defendant further executed a calculated, bad-faith "bait-and-switch" scheme during active legal settlement discussions—unilaterally inflating a written agreement figure from $74,143.55 to $85,174.65 *after* mutual assent was achieved—with the specific intent to exploit Plaintiff's reliance and extract unagreed-upon financial sums under threat of imminent foreclosure.

94. Defendant knew, or acted with reckless disregard of the fact, that severe emotional distress was the certain or highly likely result of its campaign of verbal intimidation, false criminal imputations, and predatory settlement maneuvers against a consumer facing housing instability.

95. Defendant's conduct was so shocking and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized community.

21

96. They behaved as economic predators by exploiting a financially distressed borrower facing imminent homelessness.

97. As a direct and proximate result of Defendant's intentional and outrageous conduct, Plaintiff suffered profound emotional and psychological distress, including acute terror, humiliation, severe anxiety, and a sense of absolute powerlessness. Physical symptoms include sleeplessness, anxiety with a racing heart, headaches and more requiring individual therapy. Defendant is liable to Plaintiff for compensatory damages for IIED.

### COUNT FIVE: Negligent Infliction of Emotional Distress (NIED)
*(In the Alternative to Count Four)*

98. Plaintiff incorporates by reference Paragraphs 1 - 97 as though fully set forth herein.

99. Defendant ServiceMac, as a professional loan servicer, owed a duty of care to Plaintiff to act with reasonable care, accuracy, and basic professionalism when executing its loan servicing duties, communicating debt balances, and reviewing account inquiries.

100. Defendant ServiceMac owed a duty of care to Plaintiff to speak the whole truth, not half truths, and to not omit material facts in its business dealings.

101. In entering an agreement with Plaintiff, ServiceMac owed a duty of care to execute that agreement with an implicit warranty / covenant of good faith and fair dealings.

102. Defendant systematically breached those duties of care by subjecting Plaintiff to a hostile, negligent, and abusive course of communication, including launching baseless,

repetitive verbal accusations of criminal conduct against him and unilaterally changing the terms of an agreement immediately prior to imminent foreclosure and homelessness.

103.    Defendant knew, or a reasonably prudent mortgage servicer in its position should have known, that weaponizing false allegations of criminal activity and utilizing aggressive intimidation tactics against an anxious borrower facing housing insecurity would cause severe emotional and physical distress.

104.    As a direct and proximate result of Defendant's negligence and hostile misconduct, Plaintiff suffered severe emotional distress, terror, and profound anxiety.

105.    Plaintiff's emotional distress has directly manifested in objective, physical symptomatology, including but not limited to severe, chronic insomnia, physical exhaustion, loss of sleep, and corresponding stress-induced physical ailments.

106.    The natural and proximate result of Defendant's hostile berating and deceptive conduct would cause a reasonable person in Plaintiff's exact position to suffer an identical degree of severe emotional and physical distress.

107.    Defendant's negligence is the direct and proximate cause of Plaintiff's physical and psychological injuries, entitling Plaintiff to compensatory damages in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant ServiceMac, LLC, and grant the following relief:

a. A declaration that Defendant's conduct constitutes unfair and deceptive trade practices in violation of M.G.L. c. 93A, § 2;

b. Actual damages, compensatory damages, punitive damages with interest.

c. An award of double or treble damages due to the willful and knowing nature of Defendant's violations pursuant to M.G.L. c. 93A, § 9;

d. An order compelling Defendant to honor the promised and contractually agreed-upon amount of $74,143.55 and to refund the difference to Plaintiff.

e. Reform Plaintiff's loan so that it incorporates the reinstatement amount outlined in section d (above), and the benefits available under the Freddie MAc special pandemic program for Deferred Payments or Forbearance including 12-months of interest free Deferred Payments..

f. Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B) due to Defendant's pattern and practice of RESPA noncompliance;

g. Order Defendant to produce all audio recordings taken between May 2023 until current;

h. Award compensatory damages for emotional distress;

i. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL:** Plaintiff demands a trial by jury on all issues so triable.

**VERIFICATION**

I, Michael J. Cox Jr., declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am the Plaintiff in this action, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief. Executed on: July 6, 2026.

Respectfully submitted under oath,

DATED: July 6, 2026

Michael J. Cox Jr.
*Pro Se Plaintiff*
11 South Edlin Street
Worcester, MA 01603
508.340.9113
paralegalmichaelcox@gmail.com